UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------X
KRYSTAL LOZAMA,

               Plaintiff,                              MEMORANDUM
                                                       AND ORDER
  -against-                                      18 CV 4351 (DLI)(RML)

SAMARITAN DAYTOP VILLAGE, INC. and
SAMUEL MCQUILLER, Individually,

               Defendants.
-------------------------------------------------------------X

LEVY, United States Magistrate Judge:

        On January 3, 2019, the court ordered defendant Samaritan Daytop Village, Inc. ("defendant" or "Samaritan") to show cause why plaintiff's counsel is not lawfully entitled to communicate with Alberto Rodriguez ("Rodriguez"), a former Samaritan employee, without notice to Samaritan's counsel and without Samaritan's consent. (Order to Show Cause, dated Jan. 3, 2019.) For the reasons stated below, I find that defendant has not shown sufficient cause why plaintiff's counsel is not lawfully entitled to communicate *ex parte* with Rodriguez.

## BACKGROUND

        Plaintiff Krystal Lozama ("plaintiff") commenced this action on August 1, 2018, asserting claims under the Family and Medical Leave Act, the New York City Human Rights Law, and Title VII of the Civil Rights Act of 1964. On December 18, 2018, plaintiff moved for a discovery conference to resolve a dispute arising from plaintiff's *ex parte* communication with Rodriguez, a former Samaritan employee, without notice to Samaritan's counsel and without Samaritan's consent. (Motion for Discovery Conference Regarding Initial Disclosure Dispute, dated Dec. 18, 2018 ("Pl.'s Mot."), Dkt. No. 13.) On January 3, 2019, I ordered defendant to show cause why plaintiff's counsel is not lawfully permitted to communicate *ex parte* with

Rodriguez. (Order to Show Cause, dated Jan. 3, 2019.) In response, defendant argued that, because Rodriguez's statements may be binding on or imputed to Samaritan for purposes of liability, Rodriguez is a "party" to the matter, and thus, under Disciplinary Rule 7–104(A)(1), plaintiff's counsel cannot communicate with him *ex parte*. (Defendant's Letter in Response to Order to Show Cause, dated Jan. 11, 2019 ("Def.'s Ltr."), Dkt. No. 15.) Plaintiff disagreed, arguing that Disciplinary Rule 7–104(A)(1) only prohibits *ex parte* communication with a corporation's current employees. (Plaintiff's Reply in Support of Motion for Discovery Conference, dated Jan. 11, 2019 ("Pl.'s Reply"), Dkt. No. 16.) Because Rodriguez is no longer an employee of Samaritan Daytop Village, the rule does not require plaintiff's counsel to notify Samaritan's counsel or obtain its consent to communicate *ex parte* with Rodriguez.

## DISCUSSION

Disciplinary Rule 7–104(A)(1) and its analogue, Rule 4.2 of the New York Rules of Professional Conduct,[1] define an organizational "party" as a person who "(i) supervises, directs or regularly consults with the organization's lawyer concerning the matter, (ii) has authority to obligate the organization with respect to the matter, or (iii) whose act or omission in connection with the matter may be imputed to the organization for purposes of civil or criminal liability." N.Y. R. PROF'L CONDUCT 4.2, Cmt. 7. New York courts have adopted a nearly universal interpretation of the term "party" to include, inter alia, *current* corporate employees "whose acts or omissions in the matter under inquiry are binding on the corporation (in effect,

---

[1] In their letters, the parties refer to Disciplinary Rule 7–104(A)(1), which was superseded in 2009 by Rule 4.2 of the New York Rules of Professional Conduct. However, both rules share a common definition of an organizational "party." See In re Amgen Inc., No. 10 MC 0249, 2011 WL 2442047, at *9 n.15 (E.D.N.Y. April 6, 2011) (describing the text of Rule 4.2 as "substantially the same as the language of the rule it superseded"), report and recommendation adopted, 2011 WL 2418815 (E.D.N.Y. June 14, 2011).

2

the corporation's "alter egos") or imputed to the corporation for purposes of its liability." Niesig v. Team I, 558 N.E.2d 1030, 1035 (N.Y. 1990). "[T]he definition of 'party' in Niesig remains authoritative in New York."[2] In re Amgen Inc., No. 10 MC 0249, 2011 WL 2442047, at *9 n.15 (E.D.N.Y. Apr. 6, 2011), report and recommendation adopted, 2011 WL 2418815 (E.D.N.Y. June 14, 2011); see also Muniz v. Re Spec Corp., 230 F. Supp. 3d 147, 156–57 (S.D.N.Y. 2017) ("Niesig concluded that 'party' status applies only to current employees of corporate parties. . . . This is a bright-line test routinely applied by the federal courts sitting in New York.") (internal citation omitted); Muriel Siebert & Co. v. Intuit Inc., 868 N.E.2d 208, 210 (N.Y. 2007) ("The policy reasons articulated in Niesig concerning the importance of informal discovery underlie our holding here that, so long as measures are taken to steer clear of privileged or confidential information, adversary counsel may conduct *ex parte* interviews of an opposing party's former employee.").

Relying on Niesig, defendant urges this court to find that a corporate "party" may be defined more broadly to include certain former employees, such as Rodriguez, whose lack of remedial action may bind or be imputed to defendant for purposes of liability. (Def.'s Ltr. at 2.) Defendant's reliance on Niesig is misplaced. Disciplinary Rule 7–104(A)(1) and its analogue, Rule 4.2, do not apply in any context to a corporation's former employees. Niesig, 558 N.E.2d at 1032. Thus, regardless of whether Rodriguez's statements may bind or be imputed to

---

[2] When courts have departed from Niesig, the primary concern has been the organization's interest in protecting confidential information gained by former employees or attorney-client privilege. See, e.g., G-I Holdings, Inc. v. Baron & Budd, 199 F.R.D. 529, 534 (S.D.N.Y. 2001) (finding that former employee of the defendant had significant exposure to privileged information, which warranted limiting the plaintiff's *ex parte* interview of that employee); Camden v. State of Md., 910 F. Supp. 1115, 1122 (D. Md. 1996) (finding that former employee's extensive exposure to confidential information warranted departure from Niesig). Defendant has not asserted, nor does the record before the court show, that Rodriguez had significant exposure to confidential or privileged information.

3

Samaritan for purposes of liability, as a former employee, Rodriguez is not "encompassed within the term 'party'. . . and so may be contacted without notice to [Samaritan's] attorney." Polycast Tech. Corp. v. Uniroyal, Inc., 129 F.R.D. 621, 626 (S.D.N.Y. 1990) (citing Niesig v. Team I, 545 N.Y.S.2d 153,156, 157 n.1 (2d Dep't 1989), aff'd as modified, 558 N.E.2d 1030 (N.Y. 1990)).

## CONCLUSION

For the above reasons, defendant has not shown good cause why plaintiff's counsel is not lawfully entitled to communicate with Rodriguez without notice to Samaritan's counsel and absent Samaritan's consent. Therefore, as long as plaintiff's counsel is scrupulous in taking measures to steer clear of privileged or confidential information, plaintiff's counsel may conduct *ex parte* communications with Rodriguez.

SO ORDERED.

/s/
ROBERT M. LEVY
Unites States Magistrate Judge

Dated: Brooklyn, New York
      March 1, 2019